09-4933-cv
Krukenkamp v. The State University of New York

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 6th day of October, two thousand and ten.

Present:     ROSEMARY S. POOLER,
             PETER W. HALL,
                  *Circuit Judges*,
             MARK R. KRAVITZ,[*]
                  *District Judge*.

_____

IRVIN B. KRUKENKAMP, M.D.,

                              *Plaintiff-Appellant*,

        -v.-                                              09-4933-cv

THE STATE UNIVERSITY OF NEW YORK AT STONY BROOK, THE STONY BROOK UNIVERSITY MEDICAL CENTER, STEVEN L. STRONGWATER, M.D. in his capacity as Chief Executive Officer of Stony Brook University Medical Center, THOMAS BIANCANIELLO, M.D. individually and in his capacity as Chief Medical Officer of the Stony Brook University Medical Center, RICHARD FINE, M.D. individually and in his capacity as Dean of the Stony Brook University School of Medicine at the Stony Brook University Medical Center, JOHN RICOTTA, M.D., individually and in his capacity as Chair of the Department of Surgery at the School of Medicine at SUNY Stony Brook and Chief of Surgery at the Stony Brook University Medical Center, TODD ROSENGART, M.D. in his capacity as Chief of the Division of Cardiothoracic Surgery in the Department of Surgery at Stony Brook University Medical Center, SHIRLEY STRUM KENNY, Ph.D. individually and in her capacity as President of the State University of New York at Stony Brook and also in her capacity as Governing Body of the Stony Brook University Medical Center,

                              *Defendants-Appellees*.

_____

[*]The Honorable Mark R. Kravitz, of the United States District Court for the District of Connecticut, sitting by designation.

Appearing for Appellees: Ann P. Zybert, Assistant Solicitor General of Counsel (Andrew M. Cuomo, Attorney General of the State of New York, Barbara D. Underwood, Solicitor General, Richard Dearing, Deputy Solicitor General), New York, NY.

Appearing for Appellant: Timothy B. Glynn, Glynn and Mercep, LLP, Stony Brook, NY.

Appeal from the United States District Court for the Eastern District of New York (Platt, *J.*).

**ON CONSIDERATION WHEREOF**, **IT IS HEREBY ORDERED**, **ADJUDGED**, **AND DECREED** that the judgment of said District Court be and hereby is **AFFIRMED** in part, **VACATED** in part, and **REMANDED** for further proceedings.

Dr. Irvin B. Krukenkamp appeals from the Eastern District of New York (Platt, *J.*)'s grant of summary judgment dismissing Dr. Krukenkamp's First Amendment retaliation and Fourteenth Amendment procedural due process claims. Dr. Krukenkamp also appeals the District Court's dismissal with prejudice of Dr. Krukenkamp's state law breach of contract claims. Lastly, Dr. Krukenkamp requests that if we remand this case, we remand to a different district court judge. We assume the parties' familiarity with the underlying facts, procedural history, and issues presented on appeal.

In 2004, Dr. Krukenkamp sued the State University of New York at Stony Brook ("SUNY Stony Brook"), Stony Brook University Medical Center ("SB Medical Center"), and various affiliated officials, alleging, *inter alia*, violations of free speech and due process rights ("*Krukenkamp I*"). In September 2005, the parties to *Krukenkamp I* agreed to dismiss the case with prejudice, providing for payments to Dr. Krukenkamp and limiting his future employment with SUNY Stony Brook and SB Medical Center. As relevant to this appeal, the Settlement Agreement provided that: (1) during 2006, Dr. Krukenkamp would retain his full staff membership at SB Medical Center and his title, positions, and appointments as professor at SUNY Stony Brook; (2) during 2007, Dr. Krukenkamp would be on Title F paid leave

2

("presidential leave"); and (3) on January 1, 2008, Dr. Krukenkamp would resign all his positions at SUNY Stony Brook and SB Medical Center, subject to the *Krukenkamp I* defendants' performance of various sections of the contract.

In July and August 2006, Dr. Krukenkamp gave interviews to newspaper, radio, and television outlets, criticizing SB Medical Center's pediatric program and discussing the New York Department of Health's investigation into that program. Dr. Krukenkamp alleges that after these public comments, Defendants to the current suit ("*Krukenkamp II*") retaliated against him. Dr. Krukenkamp filed suit in March 2007, and on October 26, 2009, the District Court granted summary judgment for Defendants, dismissing Dr. Krukenkamp's First Amendment retaliation claim and procedural due process claim.

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c); *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "We review de novo the district court's grant of summary judgment, drawing all factual inferences in favor of the non-moving party." *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 107 (2d Cir. 2008).

A. FIRST AMENDMENT RETALIATION CLAIM

"To establish a First Amendment retaliation claim, a plaintiff must show: (1) his speech addressed a matter of public concern; (2) he suffered an adverse employment action; and (3) a causal connection between the speech and the adverse employment action." *Singh v. City of New York*, 524 F.3d 361, 372 (2d Cir. 2008). Upon such a showing, summary judgment should be denied unless the defendant shows, as a matter of law, that it "would have taken the same adverse employment action even absent the protected conduct." *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007).

3

### 1. The Existence of Speech of Public Concern

Defendants do not dispute that Dr. Krukenkamp's statements were a matter of public concern and they were aware of them by August 2006.

### 2. Adverse Employment Action

An employment action is "adverse" if it "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Dillon*, 497 F.3d at 254 (citing *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006)) (quotation marks omitted). Although Dr. Krukenkamp alleges that Defendants took six adverse employment actions toward him, we find that a reasonable jury could find that he suffered only three such actions.

First, Defendants do not contest that they put Dr. Krukenkamp on "inactive" clinical status at SB Medical Center in January 2007. Preventing a surgeon from performing surgery is an "adverse" action.

Second, while not required to do so without considering the reasons that Defendants may proffer for the variance, a reasonable jury could find that after Dr. Krukenkamp's July 2006 speech, Defendants referred fewer cases to Dr. Krukenkamp while he was on call at SB Medical Center. Dr. Krukenkamp testified that doctors were referred patients that asked for them and, while on call, those unassigned patients who did not ask for a specific doctor. Viewing Defendants' work schedule and referral log records in the light most favorable to Dr. Krukenkamp, a reasonable jury could find that on days in which he was on call, Dr. Krukenkamp received significantly fewer referrals after his speech than he did before his speech. Defendants do not contest that referring significantly fewer patients to Dr. Krukenkamp, if true, would be "adverse."

4

Third, a reasonable jury could find that Defendants' removal of Dr. Krukenkamp's name from SB Medical Center's public "Find a Doctor" website in January 2007 was an adverse action. Defendants do not contest that they took this action but argue that it was trivial. However, a reasonable jury could find such action was "adverse," hampering Dr. Krukenkamp's ability to attract new patients and find a new employer. A reasonable jury could find that Defendants aimed to reduce the number of patients requesting Dr. Krukenkamp (assigned patients), just as such jury could find that they reduced his on call referrals (unassigned patients).

For the reasons stated by the District Court, we agree that Dr. Krukenkamp offered insufficient proof that Defendants pressured his secretary to leave his office in February 2007. Further, we agree that neither Defendants' nonrenovation of Dr. Krukenkamp's office nor their seating of him on a small stool next to the garbage before a meeting is a sufficiently "adverse" action. No reasonable jury could find that these acts "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Dillon*, 497 F.3d at 254; *cf. Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002) ("minor incidents" can "attain the critical mass of unreasonable inferiority" if they "occur often and over a long[] period of time").

### 3. Causation

To establish causation, a plaintiff "must show that the protected speech was a substantial motivating factor in the adverse employment action." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 167 (2d Cir. 2006) (quotation marks omitted). "A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009).

Dr. Krukenkamp provided evidence that after his July 2006 comments, his referrals immediately dropped and six months later Defendants placed him on inactive status and removed

5

his name from a public directory. On this record, a reasonable jury could find that Dr. Krukenkamp's public comments were a substantial motivation factor in Defendants' reduction of his referrals. A reasonable jury could find that Defendants waited six months for an opportune time to take the most visible adverse acts, when Dr. Krukenkamp was scheduled to go on Title F leave. *See Espinal*, 558 F.3d at 129 (finding six month delay after protected speech and alleged retaliatory acts was "sufficient to support an inference of a causal connection" because it was "plausible that [defendants] waited to exact their retaliation at an opportune time").

### 4. Defendants' Nonretaliatory Reason

If Defendants prove as a matter of law that they would have taken the same actions for legitimate reasons, and not for retaliation, then summary judgment is proper. *Dillon*, 497 F.3d at 251. Here, Defendants do not offer a reason for the reduced referrals after July 2006. But they argue that if Dr. Krukenkamp suffered adverse employment actions in 2007 or 2008, the actions resulted from Defendants' implementation of the Settlement Agreement. A reasonable jury could find otherwise. Although the agreement provided that Dr. Krukenkamp would be on Title F leave starting January 1, 2007, Dr. Krukenkamp presented uncontroverted testimony by the Dean of SUNY Stony Brook Medical School, from which a reasonable jury could find that Title F leave applies only to academic work at SUNY Stony Brook, not clinical work at SB Medical Center. Further, given the ambiguity of Dr. Krukenkamp's agreement to resign on January 1, 2008 subject to various conditions, it is not clear as a matter of law that Defendants would have taken the same action if Dr. Krukenkamp had not spoken publicly about the pediatric program.

\*      \*      \*

In sum, there are genuine issues of material fact regarding whether Defendants retaliated against Dr. Krukenkamp after he spoke by (1) referring fewer patients to him when he was on

6

call; (2) placing him on inactive status; and (3) removing his name from the public "Find a Doctor" website.

**B. PROCEDURAL DUE PROCESS CLAIM**

The District Court did not err in granting summary judgment dismissing Dr. Krukenkamp's procedural due process claim. By signing the Settlement Agreement, Dr. Krukenkamp forfeited his interest in continued employment, so long as Defendants adhered to certain provisions in the contract. Dr. Krukenkamp alleges that Defendants violated procedural due process by breaching the Settlement Agreement's provisions regarding his duties and positions at SUNY Stony Brook and SB Medical Center and not providing him notice and a hearing to rectify the breach. The District Court did not err in finding that Dr. Krukenkamp has not shown a constitutional deprivation of due process. Dr. Krukenkamp had adequate postdeprivation remedies, including a state law contract claim or an Article 78 claim. *See Costello v. Town of Fairfield*, 811 F.2d 782, 784 (2d Cir. 1987) ("A contract dispute . . . does not give rise to a cause of action under Section 1983."); *Grillo v. New York City Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002) (finding that "an Article 78 proceeding is a perfectly adequate postdeprivation remedy" for the arbitrary deprivation of a property or liberty interest (quotation marks omitted)).

**C. DISMISSAL OF BREACH OF CONTRACT CLAIMS**

Given the above rulings, and the District Court's erroneous dismissal of all claims over which it had original jurisdiction, we vacate the District Court's dismissal of Dr. Krukenkamp's state law breach of contract claims and remand with an order to dismiss those claims *without* prejudice.

**D. REQUEST TO REMAND TO A DIFFERENT DISTRICT COURT JUDGE**

Dr. Krukenkamp requests that we remand to a different district court judge. However, Dr. Krukenkamp has not shown that Judge Platt's alleged failure to award sufficient time at oral argument would cause an objective observer to question Judge Platt's impartiality. *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 21 (2d Cir. 1996). We remand this case to Judge Platt for further proceedings.

**CONCLUSION**

We **VACATE** the District Court's grant of summary judgment for First Amendment retaliation based on Dr. Krukenkamp's allegations that Defendants (1) referred fewer patients to him when he was on call; (2) placed him on inactive clinical status; and (3) removed his name from the public "Find a Doctor" website. We **VACATE** the District Court's dismissal with prejudice of Dr. Krukenkamp's state law breach of contract claims and remand with an **ORDER** that the claims be dismissed without prejudice. In all other respects, we **AFFIRM** the District Court and **REMAND** the case to Judge Platt for further proceedings.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk